UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
08-CV-5310(JMR/RLE)

| | |
|---|---|
| Christopher Holscher and Jeremiah Brendsel | ) ) ) |
| v. | ) ORDER ) |
| William Hawley; Brent Lindgren; and County of Mille Lacs | ) ) ) |

Plaintiffs bring suit against Deputy William Hawley; his supervisor, Sheriff Brent Lindgren; and Mille Lacs County for injuries sustained during their arrest. Defendants move for summary judgment. Defendants' motion is granted.

I. Background[1]

   A. The Arrest

On May 23, 2004, after a night of partying and drinking in Princeton and Onamia, Minnesota, plaintiffs, Christopher Holscher and Jeremiah Brendsel, were driving their four-wheelers home at approximately 2:00 a.m. Holscher acknowledges drinking 10 to 12 beers; Brendsel had 7 to 9 beers, and a "couple shots." (Holscher Dep. 32:5-6; Brendsel Dep. 22:12.) Deputy Mott saw them as they drove along Highway 169. He turned on his squad car lights, and began to follow them. When plaintiffs would not pull over, he called for back up. (Hawley Dep. 171:13-172:10.) Deputies Hawley,

---

[1] The Court considers all facts in the light most favorable to plaintiffs, the non-moving parties, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P"). The facts are taken from the pleadings.

Barnes, Holada, Schaeffer, and Holmquist responded.

Plaintiffs attempted to flee from the Officers by turning into a wooded area behind Brendsel's home. They parked their four-wheelers and hid in a deer stand for an hour or two. Believing the police had left, they began walking toward Brendsel's house. When they saw police flashlights, they ran back into the woods.

When Deputy Hawley arrived, he, along with Deputies Mott and Holada, followed plaintiffs' tracks into the woods. (Hawley Dep. 176:5-6.) They found the four-wheelers and yelled for plaintiffs to come out. (Hawley Dep. 176:9-11.) Getting no response, Hawley returned to his car to get his canine partner. He reentered the woods yelling, "Come out. We have a canine unit. Come out now, or we're going to set the dog on the track; and you may be bitten if you do not come out." (Hawley Dep. 177:7-12.) Plaintiffs acknowledge hearing the Officer's warning about the dog. (Holscher Dep. 47:22-24; Brendsel Dep. 28:6-7.)

Again, neither plaintiff responded. Hawley then released his dog, Taz. Taz found Holscher first. Holscher claims he got up and said, "I give up." (Holscher Dep. 40:24-25.) He remembers Deputy Hawley ordering him to get on his back, and giving Taz a command to get him. (Holscher Dep. 40:22-41:1.) Brendsel further recalls Holscher was in the process of standing up and in a crouched position, when Deputy Hawley released the dog. (Brendsel Dep. 31:6-7; 32:20.) According to Holscher, the dog bit his arms, hand,

2

and leg before "they told him to stop."

With Holscher apprehended, the Officers began to look for Brendsel. He was found when he started to run as Taz approached. (Brendsel Dep. 39:22-25.) Brendsel heard the Officers say, "Get on your belly or the dog will attack." (Brendsel Dep. 40:8-10.) As Brendsel "went towards [his] belly," the dog attacked. (Brendsel Dep. 39:22-25.) It was only after Brendsel's hands were behind his back and handcuffed, that Taz was ordered to release his hold.

During the canine apprehension, Holscher sustained bites to his arm and leg. His thumb required four stitches, which later became infected, requiring a three-day hospitalization. (Holscher Dep. 51:14-22.) He now has a three-quarter inch scar on his thumb. (Holscher Dep. 43:14-18.) Brendsel sustained a puncture wound to his right calf and claims he had sore calf muscles. He required no stitches or follow-up, and has no permanent injuries. (Brendsel Dep. 61:20.)

After receiving medical treatment, the Officers took plaintiffs to the Mille Lacs County Jail. Holscher pleaded guilty to felony flight and underage drinking and driving. Brendsel subsequently pleaded guilty to felony flight, driving after license revocation, and underage drinking.

B. <u>Expert Review</u>

Three experts offered opinions supporting plaintiffs' claims. Dr. Richard Polsky, a certified applied animal behaviorist, opined

that, "Given the limited degree of risk that Mr. Holscher and Mr. Brendsel presented to the police and to the public, [] the release of a dog to attack or subdue the plaintiffs was inappropriate." David Schassler, a peace officer, concluded the use of a police dog constituted an unreasonable use of force, because plaintiffs were neither armed nor suspected of a violent crime. Dennis Waller, a former police officer, determined Hawley's repeated use of excessive force demonstrates an obvious supervisory failure by the Sheriff to investigate and discipline employees.

C. Mille Lacs County Policies and Procedures

The Mille Lacs County Policy and Procedure Manual covers use of dogs in law enforcement. Section 424.2 of the Manual states, "The use of sheriff dogs is a legitimate tool in law enforcement." Such use is justified when force is necessary "to make or maintain an arrest." The Manual emphasizes a deputy may "only use the amount of force necessary" for an arrest.

Sheriff Lindgren states excessive force has not been an issue in his department. He claims there has never been a reason to investigate Deputy Hawley's deployment of a canine officer in an arrest.

D. The Lawsuit

This case originally included plaintiffs Lonnie Strandlund and Richard Krawiecki, who accused Deputy Hawley, Sheriff Lindgren, and Mille Lacs County of violating their rights under 42 U.S.C. §§ 1983

4

and 1988, and Minnesota state law. Partial summary judgment was granted to defendants as to Lonnie Strandlund's claims, and the remaining plaintiffs were dismissed. The dismissed plaintiffs appealed. On appeal, the cases were reinstated with instructions to sever appellants' claims. Strandlund v. Hawley, 532 F.3d 741 (8th Cir. 2008).

Brendsel and Holscher re-filed this suit, again accusing Deputy Hawley, Sheriff Lindgren, and Mille Lacs County of violating their constitutional rights under 42 U.S.C. § 1983. Plaintiffs claim Deputy Hawley is liable for assault, battery, intentional infliction of emotional distress, and negligence. They further claim the County and the Sheriff were negligent in selecting, training, retaining, supervising, investigating and disciplining their officers, all in violation of Minnesota law. Plaintiffs believe the County and the Sheriff are accountable for the actions of Deputy Hawley under a theory of respondeat superior. On July 7, 2009, defendants moved for summary judgment on all counts. Plaintiffs opposed the motion.

The Court heard oral argument on August 21, 2009. Shortly thereafter, Deputy Hawley requested and received a temporary stay of judicial proceedings, pursuant to the Service Members Civil Relief Act. 50 U.S.C. app. § 501-96. Deputy Hawley returned from active duty on June 15, 2010; the stay was lifted on August 14, 2010.

II. <u>Discussion</u>

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 246 (1986). The Court examines the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences. <u>Hammond v. Northland Counseling Ctr., Inc.</u>, 218 F.3d 886, 891 (8th Cir. 2000). The party opposing summary judgment, however, may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. <u>See</u> <u>Anderson</u>, 477 U.S. at 248-49.

A. <u>Excessive Force</u>

Plaintiffs' complaint alleges defendants violated their rights under the First, Fourth, Fifth, and Fourteenth Amendments. Their response to defendants' motion for summary judgment, however, abandoned all but the Fourth Amendment claim. Plaintiffs claim Deputy Hawley ordered his dog to attack them, in violation of their constitutional rights. Defendants reply Deputy Hawley is entitled to qualified immunity, as his actions were reasonable under the circumstances. The Court agrees.

Qualified immunity protects government officials from suit unless their conduct violates clearly established statutory or

constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  When considering a qualified immunity claim, a court asks whether the plaintiff demonstrated a violation of a constitutional right, and whether that right was clearly established at the time of violation.  Pearson v. Callahan, 129 S. Ct. 808, 817 (2009). District courts may "exercise their sound discretion in deciding which of the two" questions to address first.  Id. at 818.

"The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person."  Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998).  A court evaluates an officer's use of force asking whether the "officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id.  "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct."  Foster v. Met. Airports Comm'n., 914 F.2d 1076, 1081 (8th Cir. 1990).  Here, the Court finds Deputy Hawley's use of force was reasonable.

An individual's flight while "under the influence of drugs or alcohol [poses] a serious threat to public safety," justifying use of force in apprehending the suspect.  Wertish v. Krueger, 433 F.3d

7

1062, 1066 (8th Cir. 2006). Plaintiffs admit they fled from the deputies and ignored commands to surrender after an evening of drinking. (Holscher Dep. 32:5-6; Brendsel Dep. 22:16.). They were warned, and acknowledge hearing, that the Officers had a dog. Neither plaintiff complied with the Officers' orders before the dog apprehended them.

Further, despite being told to get on his back, Holscher got up as the dog approached. (Holscher Dep. 40:24.) Brendsel remembers Holscher being in a crouched position getting ready to get up when the dog jumped at him. (Brendsel Dep. 31:6-13.) Even after the Officers handcuffed Holscher, he deliberately lied and attempted to hide Brendsel's whereabouts. (Brendsel Dep. 38:1-25.) Brendsel was found when he got up to run away from the dog. (Brendsel Dep. 39:22-25.) Hawley's decision to release Taz was reasonable in light of plaintiffs' noncompliance and continued attempts to flee.

Plaintiffs reply claiming Deputy Hawley's use of a canine amounted to an "arguably lethal force" and, as such, should be viewed as unreasonable, per se. This may be plaintiffs' view, but it is not the law.

The Eighth Circuit finds the use of a police dog to apprehend a fleeing suspect is not, per se, unreasonable. See Kuha v. City of Minnetonka, 365 F.3d 590, 600 (8th Cir. 2003), overrruled on separate grounds by Szabla v. City of Brooklyn Park, 486 F.3d 385

8

(8th Cir. 2007). Indeed, the Eighth Circuit has hypothesized that a dog could be appropriately used in precisely these circumstances. See Robinette v. Barnes, 854 F.2d 909, 914 (8th Cir. 1988)("The use of dogs can make it more likely that the officers can apprehend suspects without the risks attendant to the use of firearms in the darkness, thus, frequently enhancing the safety of the officers, bystanders and the suspect.") Using a canine officer to locate fleeing suspects hiding in the woods is not unreasonable force, per se.

In addition, the Court notes plaintiffs' injuries, while doubtless unpleasant, were not serious. The extent of a plaintiff's injury is "relevant to reasonableness of force used." Foster, 914 F.2d at 1082. Holscher received four stitches, and his thumb healed within weeks. His only permanent injury seems to be a minor thumb scar. Brendsel received no treatment beyond his initial visit to the emergency room, and he has no permanent injuries. The application of force was clearly not "arguably lethal."

Plaintiffs claim they got down on the ground in the woods after the dog had sniffed them out, and before Deputy Hawley unleashed his dog. (Pls.' Mem. Opp. Summ. J. 13.) Based on this assertion, they claim Hawley acted unreasonably. But their own deposition testimony contradicts this claim. Holscher said that when the dog found him, he got up, and "that's when they told Taz

to get me." (Holscher Dep. 40:22-41:1.) When Taz began searching for Brendsel, Brendsel admits that he got up to get away because the dog was getting close. Even viewing the evidence in a light most favorable to the nonmoving parties, plaintiffs' testimony reveals they did not comply with police orders before the dog was released.

Plaintiffs' proffered expert testimony is unavailing. Dr. Polsky simply assumes "the limited degree of risk that Mr. Holscher and Mr. Brendsel presented to the police." The Court is entirely unwilling to credit Polsky's view of two men who secrete themselves while fleeing from police officers at night. While the Court must accept plaintiffs' factual allegations as true, it is not compelled to accept wholly unsupported opinions.

Similarly, Officer Schassler's opinion is a textbook example of a post hoc opinion: He asserts the use of a police dog was unreasonable because plaintiffs were unarmed. The problem, of course, is that Deputy Hawley and his fellow Officers had no assurance that the two people they sought to apprehend, hiding in the woods sometime after 2:00 a.m., were not armed. It is for this reason the law requires courts to consider officers' actions at the time, rather than looking back from the cool of a judicial chamber, let alone the desk of a paid expert. See Graham v. Connor, 490 U.S. 386, 396 (1989)("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer

on the scene, rather than with the 20/20 vision of hindsight.").

Finding no violation of a constitutional right, the Court need not ask whether that right was clearly established. See Coleman v. Parkman, 349 F.3d 534, 538 (8th Cir. 2003).

B. Constitutional Claims Against County

Plaintiffs accuse the municipality of violating their constitutional rights under § 1983. They also claim Sheriff Lindgren and Mille Lacs County are liable for the actions of their officers. These claims fail.

"Without a constitutional violation by the individual officers, there can be no 1983 or Monell" claim for municipal liability. Hayek v. City of St. Paul, 488 F.3d 1049, 1055 (8th Cir. 2007). The Court has found no constitutional violation; therefore, these claims are dismissed.

One who would hold a supervisor and a municipality liable must show the supervisor "personally participated in or had direct responsibility for the alleged violations," or "actually knew of and was deliberately indifferent to or tacitly authorized the unconstitutional acts." McDowell v. Jones, 990 F.2d 433, 435 (8th Cir. 1993). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what" he might see. Ottman v. City of Independence, 341 F.3d 751, 761 (8th Cir. 2003). Plaintiffs' reply to the motion for summary judgment is bereft of any evidence showing Sheriff Lindgren

knew of or avoided confronting any unconstitutional conduct. Indeed, plaintiffs emphasize "[n]one of Defendant Hawley's supervisors ever brought anything" to Sheriff Lindgren's attention. (Pls.' Mem. Opp. Summ. J. 10.) In the absence of any proof of knowledge or complicity, and, of course, in the absence of any unconstitutional conduct, plaintiffs may not proceed with this claim.

### C. State Law Claims

Plaintiffs assert state law claims of assault, battery, intentional infliction of emotional distress, and negligence against Deputy Hawley, and a respondeat superior claim against the County and the Sheriff. In addition, plaintiffs accuse the County and the Sheriff of negligent selection, investigation, training, retention, supervision, and discipline. Defendants argue they are entitled to official, vicarious, and statutory immunity. The Court agrees.

#### 1. Official Immunity

Minnesota public officials are immune from state law claims where their duties require an exercise of discretion, so long as the official did not act with malice. Johnson v. Morris, 453 N.W.2d 31, 41-42 (Minn. 1990); see also Susla v. State, 247 N.W.2d 907, 912 (Minn. 1976)("[A] public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is

12

guilty of a willful or malicious wrong."). Plaintiffs acknowledge that a police officer's decision to use a dog to apprehend a fleeing felon is a discretionary act. See Hyatt v. Anoka Police Dep't, 700 N.W.2d 502, 508 (Minn. Ct. App. 2005). Accordingly, the Court considers plaintiffs' allegations of malice.

In Minnesota, malice requires "intentionally committing an act that the official has reason to believe is legally prohibited." Kelly v. City of Minneapolis, 598 N.W.2d 657, 663 (Minn. 1999). The Court conducts "an objective inquiry into the legal reasonableness of an official's actions." State by Beaulieu v. City of Mounds View, 518 N.W.2d 567, 571 (Minn. 1994). Even viewing the facts in the light most favorable to plaintiffs, the Court discerns no evidence showing Deputy Hawley "intentionally committ[ed] an act that [he had] reason to believe [was] legally prohibited." Kelly, 598 N.W.2d at 663. Deputy Hawley's actions were reasonable when the Court considers plaintiffs' intentional noncompliance with orders.

2. Statutory Immunity

Defendants are immune from plaintiffs' claims of negligent selection, training,[2] retention, supervision, investigation, and

---

[2] The Court notes that "current Minnesota law does not recognize a claim for negligent training." Mann v. Shevich, No. 08-5202, 2010 U.S. Dist. LEXIS 16109, at *28 (D. Minn. 2010). Accordingly, the Court addresses statutory immunity only as to the remaining claims of negligence.

13

discipline. Minnesota holds municipalities immune from "any claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn. Stat. § 466.03. This immunity protects discretionary acts of judgment made by government agents. Steinke v. City of Andover, 525 N.W.2d 173, 175 (Minn. 1994).

Minnesota courts hold decisions regarding hiring, supervision, and retention of employees are discretionary and entitled to statutory immunity. Hassan v. City of Minneapolis, No. 04-3974, 2006 U.S. Dist. LEXIS 64213, at *28 (D. Minn. Sept. 1, 2006)(citations omitted). Accordingly, Mille Lacs County and Sheriff Lindgren are immune from plaintiffs' claims.

Plaintiffs argue that, even if the County is protected by statutory immunity, claims against Sheriff Lindgren "may not be dismissed," because immunity "applies only to Mille Lacs County." (Pls.' Mem. Opp. Summ. J. 18.) They are wrong.[3] Minnesota does not limit this doctrine to counties. See, e.g., Mann v. Shevich,

---

[3] The Court acknowledges its previous statement that Sheriff Lindgren does not enjoy statutory immunity because "statutory immunity applies only to municipalities." Strandlund v. Hawley, No. 05-CV-468, 2007 U.S. Dist. LEXIS 27600, at *23 (D. Minn. Mar. 30, 2007). More recent case law suggests the statute protects both the sheriff and the county. See, e.g., Mann v. Shevich, No. 08-5202, 2010 U.S. Dist. LEXIS 16109, at *28 (D. Minn. 2010)(finding sheriff and county immune). Regardless, Sheriff Lindgren is entitled to official immunity on this claim, and plaintiffs' negligent selection, training, retention, supervision, investigation, and discipline claim may not proceed.

No. 08-5202, 2010 U.S. Dist. LEXIS 16109, at *28 (D. Minn. 2010)(finding sheriff and county immune); Hawkinson v. Anoka County, No. A05-2251, 2006 Minn. App. Unpub. LEXIS 996, at *14-15 (Minn. Ct. App. Aug. 29, 2006)(finding district court erred in not finding statutory immunity for a county and its sheriff). Both Mille Lacs County and Sheriff Lindgren are immune from plaintiffs' claims.

### 3. Vicarious Immunity

Having found Hawley and Lindgren immune from liability, Mille Lacs County is similarly entitled to vicarious official immunity from plaintiffs' claims. See Wiederholt v. City of Minneapolis, 581 N.W. 2d 312, 316 (Minn. 1998)("[V]icarious official immunity protects the government entity from suit based on the official immunity of its employee."); see also Pletan v. Gaines, 494 N.W.2d 38, 42 (Minn. 1992)("Generally, if the employee is found to have immunity, the claim against the municipal employer has been dismissed without any explanation.").

## III. Conclusion

Plaintiffs pleaded guilty to felony flight, driving after license revocation, and underage drinking and driving. They deliberately fled from the officers attempting to pull them over, hid for over an hour, and, when discovered in the woods, failed to comply with the Officers' orders. They were warned about the canine officer, and plaintiffs heard the warning. Plaintiffs

suffered no permanent injuries from Deputy Hawley's use of Taz in their arrest.  Under these circumstances, the use of force was reasonable.

Accordingly, IT IS ORDERED that defendants' motion for summary judgment is granted [Docket No. 17].

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August 17, 2010

s/ James M. Rosenbaum
JAMES M. ROSENBAUM
United States District Judge